HOWARD JOHNSON and MAXINE JOHNSON, Plaintiffs

v.

RICHARD L. CHILDS, as Executor of the Estate of William St. Clair Childs, Jr., deceased, Defendant

Civil No. 115-1967

District Court of the Virgin Islands

Div. of St. Croix

Christiansted Jurisdiction

Argued March 15, 1968

JAMES ISHERWOOD, ESQ., Christiansted, St. Croix, Virgin Islands, *for plaintiff*

JOHN F. JAMES, ESQ., Christiansted, St. Croix, Virgin Islands, *for defendant*

MARIS, *Circuit Judge*

## OPINION

Before me for determination is a motion for a new trial filed by the plaintiffs in the above entitled case which was tried before me without a jury at Christiansted on February 9, 1968. The suit was brought to recover a down payment which the plaintiffs had made to the defendant under a contract for the purchase of a dwelling house and plot of ground in St. Croix. The defendant filed an answer and a counterclaim seeking damages for the plaintiffs' failure to purchase the property pursuant to the contract. The facts are fully set out in the findings which I announced at the close of the trial from which I quote as follows:

"The agreement of purchase and sale was dated May 3, 1966, and provided for a down payment of $3,950.00, the balance of $38,350 to be paid in cash at the time of closing, which was fixed as of June 30, 1966. . . .

"The estate of William St. Clair Childs, Jr., was being administered in New York and an ancillary administration was taken out in this court in St. Croix.

"The plaintiffs paid to the defendant the down payment by a check drawn to Mr. John F. James, his attorney and resident agent under the statute. They paid, as I said, the sum of $3,950.00 representing the deposit.

. . .

"The sale was never closed. The purchasers, the plaintiffs here, sought a first mortgage from the Chase Manhattan Bank. This mortgage was declined, although there is some indication it was orally suggested it might have been granted in a lesser amount than they had applied for. The plaintiffs testified that they had other sources of funds they could have used but they had no written commitment from anyone for the funds needed to make the closing. As a matter of fact they never did make a tender of the balance of the purchase price to the defendant, the seller, as required by the contract.

"It appears that by consent of both parties the time of closing was postponed, it was understood it would be later and there was an effort on both sides to come to a time of closing, which, as I say, never was reached.

"The seller, the defendant here, was under the impression that the order permitting the sale in New York State in the probate proceedings there would be adequate. The District Court Commissioner concluded that it was necessary to have an express approval here and it was necessary in that connection to have the written consent of the parties in interest in the estate of William St. Clair Childs, Jr. The necessity for securing this consent, in addition to the fact that the District Court Commissioner was off the island on vacation in October and November 1966 resulted in his approval not being obtained until November 23, 1966. From that time on the plaintiffs here, having decided that they no longer desired to purchase this property, had sought to sell their contract, to secure someone else to take over the transaction, contacting real estate brokers in the island and this proved unsuccessful.

"They had, as permitted by the contract, taken possession of the house as a residence in May 1966 and their contention is the house was really not complete and somewhat inadequate for their purposes and for residence with their family and it would be necessary to enlarge it and make improvements. They made some improvements but they didn't do what they fully intended because they didn't acquire title and they didn't wish to do so until

357

they had acquired title. They remained, however, in the property until October 20th, a period of five months, aproximately, in which they were in possession. After October 20th they vacated the property and subsequently they turned over the keys to the defendant. As a matter of fact they then, at some subsequent time, purchased another property to which they took title and where they are now living.

"Likewise the defendant, this contract not having been consummated by closing, sought to sell the property to someone else, succeeded in doing so at a reduced price, and with the approval of this court, through the District Court Commissioner, under date of September 26, 1967 effected a sale of the same property to Stewart B. Meedy and Mary Van Inghen Meedy for the sum of $38,500. The commission which had to be paid on the second sale was $2,310.00, which made the net proceeds of that sale to the estate $36,190.00. The difference between that sum and $42,300.00, the purchase price under the agreement between the parties here, would be $6,110.00. This obviously is an element of loss to the estate if the plaintiffs are responsible for it.

"In addition the plaintiffs, as I have said, occupied the property for five months, or a little bit more. I find that the fair rental value of the dwelling house, the property here involved, in its condition at the time when it was rented, and without considering the improvements made by the plaintiffs' was $400.00 a month. For five months this amounts to $2,000.00, which is an item that the plaintiffs are obligated to pay to the defendant's estate.

"The plaintiffs assert that they cancelled this agreement on October 5, 1966, and they rely upon a letter written by their counsel, Mr. Isherwood, to Mr. James, counsel for the Executor, in which it is stated that they would like to cancel the agreement, as they have found other property which will meet their requirements, without further delay. They will, of course, reimburse the estate for the fair rental value of the premises but they do not wish to be considered in default as they have been ready, willing and able to close since the closing date. I find that this did not have the effect of a cancellation because it was the duty of the plaintiffs to make a tender of the balance of the purchase price if they desired to hold the defendant-executor liable for breach of contract. This they never did, although asserting they were prepared to, they didn't actually do it.

"On the other hand the defendant-executor acquiesced in the delay. So far as the delay on his part is concerned it was necessary to procure approval of the court. It is quite clear to the Court that the parties acted throughout this period of time in an effort to accommodate each other, trying to close this contract if they could, until the time when the plaintiffs found another property and decided they didn't want to go through with this deal and wrote the letter in question. But even after that they proceeded, as I have said, to seek to sell the property for their account, treating it as though they were still obligated, as, indeed, I think they were.

"Under these circumstances the estate has suffered a loss by reason of the plaintiffs' failure to comply with their agreement to pay the balance of the purchase price after the time when by the approval of the court it was possible for the defendant to proceed to give good title. And this loss the estate has suffered amounts to $6,110.00.

"The executor is claiming additional items with respect to the taxes, interest, insurance, attorney's fees; these I regard as too remote and I am not allowing these as elements of damage for which the plaintiffs are responsible. Plaintiffs however are responsible, as I have said, for rental of this property during the time they were there, amounting to $2,000.00, so that the total amount for which the plaintiffs are responsible to the defendant is $8,110.00

"They paid $3,950.00, which Mr. James has in his possession for the defendant-executor, and this leaves a balance of $4,160.00 which I find to be due, upon the counterclaim, by the plaintiffs to the defendant. . . ."

I accordingly entered a judgment dismissing the complaint and upon the counterclaim awarding the defendant $4,160.00 with interest, costs, and an attorney's fee of $1,000.00.

The principal contention of the plaintiffs in support of their motion is that the title to the property in question was not clear and merchantable on June 30, 1966 the time fixed in the contract for closing or thereafter until November 23, 1966, and that the defendant was, therefore, not in a position to make a valid conveyance at any time before the latter date. Accordingly, they assert, they were entitled to rescind the contract, as they purported to do, on Octo-

ber 5, 1966 without the necessity of tendering the defendant the balance of the purchase price, and upon such rescission to have their deposit returned to them.

■ ■ Their basis for asserting that the defendant's title was not clear and that he was not able to make a valid conveyance is solely their contention that he was required to obtain the approval of the sale by this court which approval was not given by the district court commissioner until November 23, 1966. They do not contend that the defendant's decedent did not have a good title, when he died, to the property. I am satisfied that the plaintiffs' contention is wholly without merit. While at the trial I accepted the view that the approval of the sale by the court was essential to a valid conveyance, a view which the district court commissioner had previously taken, I am now quite clear that such approval was not necessary in this case and that the defendant was in a position to convey a good title at any time that the plaintiffs had tendered the purchase price.

It is true that 15 V.I.C. § 491 provides that "No sale of the property of a decedent's estate is valid unless made by order of the district court, as in this chapter prescribed, or unless otherwise authorized by law or the decedent's will." But it will be seen that the requirement of § 491 for court approval of an executor's sale is only in cases where such a sale is not "otherwise authorized by law or the decedent's will." Here the sale is otherwise authorized by law, namely, by 15 V.I.C. § 5 which expressly provides that every will, even though it does not contain a valid power of sale, shall be construed to give to the executor the power to sell all of the real property owned by the decedent at the time of his death which has not been specifically devised, unless the will expressly prohibits its sale. In the latter two situations, and perhaps others, § 491 doubtless applies.

Thus read, the two sections are not inconsistent, but rather complement each other.

In this case the decedent's will neither specifically devised the real estate in question nor expressly prohibited its sale. I conclude, therefore, that under the statute, 15 V.I.C. § 5, the defendant had full power to sell and convey the real estate in question to the plaintiffs without leave of this court. Accordingly it was incumbent upon the plaintiffs to make a tender of the balance of the purchase price before they were in a legal position to rescind the contract and secure the return of their deposit. 55 Am. Jur. Vendor and Purchaser § 601. And see 55 Am. Jur. Vendor and Purchaser § 602 as to the vendee's duty to make a tender even if court approval of the sale had been required.

The plaintiffs also contend that the defendant breached the contract by failing to convey the property within the time fixed in the contract. The short answer to this contention is that the time of closing was postponed with the consent of both parties, as I found from the evidence, to enable the plaintiffs to secure financing and the defendant court approval of the sale. Moreover it is the fact that the plaintiffs, who had been given possession of the property, remained in it until October 20, 1966, 15 days after their purported rescission, thus waiving their right to rescind. 55 Am. Jur. Vendor and Purchaser, §§ 604 et seq. Sitlington v. Fulton, 10 Cir. 1960, 281 F.2d 552, 555. Indeed the evidence fully supports the finding that the defendants continued in their intention to purchase the property here in question until they found another property which suited them better and that it was for this reason and not because of the defendant's alleged default, that they sought to rescind the contract.

Another contention of the plaintiffs is that I erred in excluding evidence of the cost of the improvements which they made to the property and in refusing to permit

361

that cost to be set off against the amount of rental which they owed the defendant for the five months and more during which they occupied the property. However, they ignore in this connection the provision of the contract which they signed, "that, if, for some reason, this sale is not consummated, any improvements or additions made by the Buyers shall become the property of the Seller and the Buyers shall have no right to remove any additions or improvements affixed to the premises, nor shall they be entitled to any compensation for same." In view of this express waiver of the right to reimbursement for such improvements this contention is wholly without merit.

All of the plaintiffs' arguments advanced in support of their motion for a new trial are dependent upon one or another of the plaintiffs' contentions discussed above and they all fall with the failure of those contentions.

Accordingly the plaintiffs' motion for a new trial will be denied.